UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

OLIVIA MENDEZ O/B/O
E.V., a minor child,

               Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

------------------------------------X

**NOT FOR PRINT OR
ELECTRONIC PUBLICATION**

**MEMORANDUM & ORDER**
11-CV-4297(KAM)

**MATSUMOTO, United States District Judge:**

      Pursuant to 42 U.S.C. § 405(g) and 1383(c)(3),
plaintiff  Olivia Mendez ("plaintiff"), on behalf of her minor
daughter, E.V., seeks judicial review of the final decision of
defendant Commissioner of Social Security Michael Asrue
("defendant" or the "Commissioner"), who denied plaintiff's
application for Supplemental Security Income ("SSI") under Title
XVI of the Social Security Act ("the Act").  Plaintiff contends
that she is entitled to receive SSI benefits on behalf of E.V.
because the Commissioner's decision did not include new and
material evidence indicating E.V.'s marked limitations in the
additional domains of "acquiring and using information" and
"interacting and relating with others."  (*See generally* ECF No.
1, Complaint, dated 9/8/2011 ("Compl.").)  Presently before the
court are plaintiff's motion for a remand in light of new

evidence and defendant's motion for judgment on the pleadings.
For the reasons set forth below, plaintiff's motion for remand
is granted and defendant's cross-motion for judgment on the
pleadings is denied.

**BACKGROUND**

**I.    Social Security Disability Determination Process**

Under the Act, "[e]very aged, blind, or disabled
individual who is determined . . . to be eligible on the basis
of his income and resources shall, in accordance with and
subject to the provisions of this subchapter, be paid benefits
by the Commissioner of Social Security."  42 U.S.C. § 1381a.  An
individual under the age of eighteen is considered disabled
under the Act if she has "a medically determinable physical or
mental impairment, which results in marked and severe functional
limitations, and which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  *Id.* § 1382c(a)(3)(C)(i);
*Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487
(E.D.N.Y. 2003).  Further, although not a relevant factor here,
an individual under the age of eighteen who "engages in
substantial gainful activity" is not eligible for SSI benefits.
42 U.S.C. § 1382c(a)(3)(C)(ii); *Kittles*, 245 F.Supp.2d at 488;
20 C.F.R. § 416.924(b).

In order for a claimant under the age of eighteen to be found disabled, the Act requires an ALJ to conduct a three-step sequential analysis finding each of the following: (1) that the claimant is not engaged in substantial gainful activity; (2) that the claimant has a medically determinable impairment or a combination of impairments that is "severe" (i.e., the impairment or combination of impairments cause more than a minimal functional limitation); and (3) that the impairment or combination of impairments meet or equal a disabling condition identified in the listing of impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment"). *See Jones ex rel. T.J. v. Astrue*, No. 07-CV-4886, 2010 WL 1049283, at *5 (E.D.N.Y. Mar. 17, 2010); *Kittles*, 245 F. Supp. 2d at 488; 20 C.F.R. § 416.924(b)-(d). Equivalence to a listed impairment may be medical or functional. *See Jones ex rel. T.J.*, 2010 WL 1049283, at *5; *Kittles*, 245 F.Supp.2d at 488; 20 C.F.R. § 416.924(d).

Analysis of functional equivalence requires the ALJ to assess the claimant's functional ability in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1). The six domains are "broad areas of functioning intended to capture all of what a child can or cannot do," *id.*, and include: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others;

(iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) health and physical well-being," *id.* Functional equivalence is established when the ALJ finds that the claimant has a "marked limitation" in two domains or an "extreme limitation" in one domain. 20 C.F.R. § 416.926a(a). "Marked limitation" is described as an impairment that seriously interferes with a claimant's ability to "independently initiate, sustain and complete activities." *Id.* § 416.926a(e)(2). It is "more than moderate, but less than extreme." *Id.* In addition, "marked limitation" is also described as what would be expected with the equivalent of two standard deviations below the mean on standardized testing. *Id.* § 416.926a(e)(2)(iii). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." *Jones*, 2010 WL 1049283, at *6 (quoting 20 C.F.R. Pt. 404, Subpart P, App. 1, § 112.00(C)).

## II. Procedural History

Plaintiff applied for SSI benefits on behalf of E.V., a minor child, on February 28, 2009, claiming that E.V. was disabled since May 1, 2008. (*See* ECF No. 19, Administrative Record, filed 5/8/2012 ("Tr.") at 19, 141-149.) E.V.'s claim

4

was denied on April 15, 2009 and the plaintiff requested an administrative hearing. (*Id.* at 19, 70-76.) Plaintiff and her attorney, with the help of a Spanish Interpreter, appeared before Administrative Law Judge David Nisnewitz ("the ALJ") on May 20, 2010. (*See id.* at 13-31.) On June 14, 2010, the ALJ issued a decision concluding that E.V. was not disabled within the definition of the Act because she does not have an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings. (Tr. at 19-31); *see also* 20 C.F.R. § 416.924(d). The ALJ found that E.V. showed no extreme limitations in any one of the six functional equivalent domains, and that she had a marked limitation in only one of the domains, namely, moving about and manipulating objects. (Tr. at 20-30).

On June 14, 2010, plaintiff sought review of the ALJ's decision by the Appeals Council. (*Id.* at 1-3.) On July 8, 2011, the Appeals Council denied the plaintiff's request for review and, as a result, the ALJ's decision became the final decision of the Commissioner (*Id.*) This appeal followed.

On September 7, 2011, plaintiff commenced this action against the Commissioner, claiming that the defendant erred in failing to accept E.V.'s April 2010 test results as new and material evidence and remand the ALJ decision. (Compl. At 5.; *see also* ECF No. 17, Plaintiff's Brief, filed 5/8/2012 ("Pl.

Br.") at 2.)  The Commissioner answered on December 7, 2011 and
moved for judgment on the pleadings on May 8, 2012.  (ECF No.
10, Answer; ECF No. 14, Mot. For J. on the Pleadings ("Def.
Mot.").)  Plaintiff opposed the motion and filed a cross-motion
for remand to consider additional evidence from a November 2010
hospitalization of E.V.  In her cross-motion for remand,
plaintiff also added new evidence of a November 2010
hospitalization during which E.V.'s shunt was replaced.  (*See*
ECF No. 16, Cross Mot. for Remand to Consider New and Material
Evidence ("Pl. Motion"); Pl. Br. at 2-3, 9.)

### III. Background and Medical History in the Administrative Record

E.V. was born on November 5, 2007 and was two years
old when the ALJ rendered his decision.  (Tr. 13, 126.)  She
lives in a three-bedroom apartment with her mother (plaintiff),
father, and brother in Queens, NY. (Tr. 136,140, 142.)  The
apartment is shared with other families, and E.V.'s family
shares one room.  (Tr. 194.)  Her family is originally from
Mexico.  (Tr. 194.)  E.V.'s father, Benjamin Vasquez, works at a
restaurant to support the family, and the family receives food
stamps to aid with expenses.  (Tr. 194, 196.)  E.V.'s mother
speaks Spanish, which is the only language spoken in the home,
although E.V.'s father speaks English.  (Tr. 175, 193, 196.)

E.V. has been disabled with Hydrocephaly since May 1,
2008, a congenital condition in which fluid builds up in the

skull, placing pressure on the brain and causing the skull to grow at above-average rates. (Tr. 141, 156, 174, 193, 353.)  As a result of E.V.'s condition, in July 2008 a shunt was placed in her skull to drain the fluid from her head to her stomach.  (Tr. at 174-75, 193, 353).  In September 2008, E.V. was hospitalized for three days due to a blocked shunt.  (Tr. 175, 197.)

## IV. Developmental History in the Administrative Record

In December 2008, when E.V. was thirteen months old, she was referred to Early Intervention Services (EIS) by her primary care physician, Dr. Caesar Preposi, because of her history of hydrocephalus and concerns with her motor development. (Tr. 192-93.)  The EIS services were provided by TheraCare and an initial bilingual family assessment was performed on December 26, 2008 by Ivelisse Hills, LMSW.  (Tr. 193-95.)  This initial assessment showed that E.V. rolled with difficulty and was unable to bear weight on her legs.  (Tr. 194.)  The report also showed she was eating well, had different cries for different needs that could be differentiated, communicated her needs by pointing and saying "este," could say "mama" and "papa," was alert and responsive, and was described as a "good baby." (*Id.*)  The report also found that Ms. Mendez was a "concerned mom" interested in ensuring that he daughter developed properly.  (Tr. 195.)  A physical evaluation was recommended.  (Tr. 195.)

On December 26, 2008, TheraCare conducted a bilingual physical evaluation in the family's home using the Peabody Developmental Motor Scales to test her motor functions. (Tr. 201-03.) This assessment showed no issues with social-emotional behavior or sensory processing. (Tr. 201.) E.V. did, however, show severely low muscle tone in the pelvis and legs, severe muscle weakness and hypermobility in the legs and lower trunk, and inability to move to a sitting position, roll, crawl, or pull to stand or bear weight on her legs. (Tr. 202-03.) The evaluation determined E.V. functioned at the age-equivalent of seven months for locomotive skills, nine months for stationary skills, and twelve months for object manipulation skills. (Tr. 202.) Overall, this assessment placed E.V.'s functioning level at 2.13 standard deviations below the mean and in the first percentile. (Tr. 202.) Physical therapy was strongly recommended to address these issues with E.V.'s motor functioning. (Tr. 203.)

On January 7, 2009, TheraCare performed a bilingual development assessment in the family's home. (Tr. 196-200.) Using the Hawaii Early Learning Profile (HELP) test, E.V.'s cognitive and language skills were assessed as age appropriate. (Tr. 198.) Using the Developmental Assessment of Young Children (DAYC) test, E.V's social-emotional and adaptive skills were also found to be average for her age. (Tr. 198.) However,

E.V.'s motor skills, also evaluated with the DAYC test, were described as "very poor" and 2.5 standard deviations below the norm.  (Tr. 198.)  With the exception of her ability to sit and crawl, E.V.'s developmental milestones were age-appropriate. (Tr. 199-200.)  The Educational Evaluator recommended physical therapy.  (Tr. 200.)

On January 8, 2009, TheraCare provided a multidisciplinary evaluation that summarized the results of their assessments.  (Tr. 231-36.)  In general, this evaluation restated information from the previous assessments and emphasized that E.V. had delays in motor development but age appropriate skills in all other domains.  (Tr. 231.)  On January 20, 2009, the New York City Early Intervention Program developed an Individualized Family Service Plan for E.V. to address issues with her motor skills development.  (Tr. 179-89.) The plan authorized three different services to take place for thirty minutes each week for a period of six months.  (Tr. 183.)

## V. Medical Expert Hearing Testimony

At the ALJ hearing on May 20, 2010, Allan M. Rothenberg, M.D. ("Dr. Rothenberg") testified as a medical expert that E.V. did not meet or equal the social security disability listings.  (Tr. 19, 361.)  Dr. Rothenberg's opinion was based on plaintiff's testimony as well as the medical evidence submitted at the hearing.  (Tr. 361-64.)  Specifically,

Dr. Rothenberg stated that E.V. did not show severe limitations in any of the six domains, and showed a marked limitation only in the fourth domain, moving about. (Tr. 361.) Dr. Rothenberg's opinion that E.V. had a marked limitation in moving about was based on E.V.'s delays in motor skills and failure to reach certain developmental milestones. (Tr. 363.)

Dr. Rothenberg testified that E.V. had a less than marked limitation in domains one (acquiring and using information) and six (health and physical well-being); and no limitation in domains two (attending and completing tasks), three (interacting with others), and five (caring for yourself). (*Id.*) Additionally, Dr. Rothenberg stated that in regards to the sixth domain--health and physical well-being--although E.V.'s condition requires the use of a shunt, it is common for a shunt to get infected or obstructed, therefore E.V.'s hospitalization was not an indication of E.V. needing shunt revisions "extra frequently." (Tr. 361, 364.)

## VI. The ALJ Opinion

On June 14, 2010 the ALJ issued an opinion finding that E.V. was not disabled under the Act. (Tr. 31.) Performing the three-step analysis set forth in the Social Security Administration Regulations (the "Regulations") at 20 C.F.R. § 416.924, the ALJ first found that E.V. "is an older infant and has never engaged in substantial gainful activity" since

February 28, 2009, the date the application was filed.  (Tr. 22.)  Second, the ALJ found that E.V.'s hydrocephalus and motor delays were severe impairments.  (*Id.*)  Third, however, the ALJ determined that E.V. did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" and that E.V. did not "have an impairment or combination of impairments that functionally equals the listings pursuant to 20 C.F.R. § 416.924(d) and 416.926a."  (Tr. 22-23.)

In finding that E.V.'s impairments did not meet or medically equal a listed impairment, the ALJ concluded that there was no evidence of "persistent disorganization or deficit motor function for age involving two extremities which (despite prescribed therapy) interferes with age appropriate major daily activities and results in disruption of in the instant case gait and station, as established by medical expert testimony."  (Tr. 22 (quotation  marks omitted).)

In finding that E.V.'s impairments did not functionally equal the listings, the ALJ evaluated the degree of limitation in the six functional equivalence domains as provided for in 20 C.F.R. §§ 416.924a, 416.926a, and 416.929. (Tr. 23-30.)  Specifically, the ALJ considered

> "all    of    the    relevant    evidence"
> includ[ing] objective medical evidence
> and    other    relevant    evidence    from

> medical sources; information from other
> sources, such as school teachers,
> family members, or friends; the
> claimant's statements (including
> statements from the claimant's
> parent(s) or other caregivers); and any
> other relevant evidence in the case
> record, including how the claimant
> functions over time and in all settings
> (i.e., at home, at school, and in the
> community).

(Tr. 23.) The ALJ also evaluated the "whole child" pursuant to 20 C.F.R. §§ 416.926a(b) and (c) and further explained in SSR 09-1p, 2009 WL 396031 (Feb. 17, 2009). (*Id.*) The ALJ stated that he evaluated how E.V. functions "in all settings and at all times, as compared to other children the same age who do not have impairments." (*Id.*)

In the first domain, acquiring and using information, the ALJ found that E.V. had a less than marked limitation. (Tr. 25-26.) The ALJ stated that this decision was based upon the testimony of the medical expert, Dr. Rothenberg, as well as the early intervention evaluation of December 2008, which illustrated E.V.'s ability to look at pictures, follow a simple request, and point. (Tr. 26.)

In the second domain, attending and completing tasks, the ALJ found that E.V. had no limitation. (Tr. 26-27.) The decision was based upon the testimony of Dr. Rothenberg, who reviewed the evaluations in the records, that there was no evidence of delay in this area. (Tr. 27.)

In the third domain, interacting and relating with others, the ALJ found there was no limitation. (Tr. 28.) The decision was based upon Dr. Rothenberg's testimony, pursuant to the December 2008 early intervention evaluation report, that E.V. was following objects, saying single words, and even saying one to three word phrases. (Tr. 28.)

In the fourth domain, moving about and manipulating objects, the ALJ found that E.V. had a marked limitation. (Tr. 29.) This decision was based upon Dr. Rothenberg's testimony of a delay in motor development noted E.V.'s medical screenings and evaluations from December 2008 to January 2009. (Tr. 29, 283-320.) Specifically, Dr. Rothenberg testified that these delays included "rolling at 8 months, usually happens 4 or 5 months, sitting up at 12 to 13 months, usually 9 months, standing up and cruising around furniture usually 11 or 13 months , but the claimant did not stand per her mother until age 2." (Tr. 29.) The ALJ also noted that E.V. was found to have motor delays at more than two standard deviations below the mean. (Tr. 24.)

In the fifth domain, caring for oneself, the ALJ found that there was no limitation. (Tr. 29.) This decision was based upon Dr. Rothenberg's testimony that there was no evidence of any limitation in this area. (*Id.*)

In the sixth domain, health and physical well-being, the ALJ found a less than marked limitation. (Tr. 30.) This

finding was made despite Dr. Rothenberg's testimony that "since [E.V.] has a shunt in place . . . it is true that from time to time the child may need what is called a shunt revision." (Tr. 30.) The ALJ also noted that petitioner alleged that E.V. goes to the hospital every six months, and that E.V will have the shunt throughout her life. (Tr. 24.)

At the hearing, there was some evidence of a discrepancy between the testimony of Dr. Rothenberg and the plaintiff (Tr. 362.), but the ALJ did not explain how he weighed the evidence in the record. The ALJ's decision on each of the six functional domains, however, is consistent with the opinion of Dr. Rothenberg, based on hi review of the records, as to each of these domains, and the ALJ's decision that E.V.'s impairment or combination of impairments did not functionally equal the listings was "established by medical expert testimony," suggesting that Dr. Rothenberg's testimony was given significant weight in the decision. (Tr. 23, 25.)

## VII. Post-Administrative Hearing Evidence

### A. April 2010 Assessments

In April 2010, E.V. had aged out of EIS and was re-evaluated to determine her needs under the NYC Committee on Preschool Special Education. (Tr. 327, 331.) This evidence was submitted to the Appeals Council and was made part of the record. (Tr. 5.)

On April 22, 2010 Anabel Haley, Ph.D ("Dr. Haley"), a
licensed psychologist, performed a bilingual social history on
E.V. (Tr. 331-34.) Dr. Haley noted E.V.'s shunt placement,
subsequent hospitalization for complications due to the shunt,
and five ear infections. (Tr. 332.) Dr. Haley reported that
E.V. showed significant improvement following her physical
therapy for the previous six months. (Tr. 332.) Dr. Haley
recommended E.V. receive psychological, educational, and
speech/language evaluations, as well as a medical examination
and physical therapy evaluation. (Tr. 333.)

On April 22, 2010, a bilingual psychological
evaluation was performed by Dr. Haley. (Tr. 335-40.) Using the
Bayley Scales of Infant and Toddler Development, E.V.'s
cognitive skills were described as average in the 25th
percentile, but her language skills were described as "extremely
low" in the second percentile and 2.1 standard deviations below
the mean. (Tr. 336, 338-39.) Using the Vineland-II Adaptive
Behavior Scales, Dr. Haley found that E.V.'s verbal
communication skills were 1.4 standard deviations below the mean
and her socialization skills were 1.2 standard deviations below
the mean. (Tr. 337-39.) This test also evaluated E.V.'s motor
skills as 1.5 standard deviations below the mean. (Tr. 339.)
Dr. Hayley recommended evaluations by a physical therapist and
speech pathologist, as well as special instruction services, to

address E.V.'s delays in communicative and cognitive development. (Tr. 340.)

On April 26, 2010, Sharene Lewis, a bilingual speech pathologist, performed a bilingual speech and language evaluation on E.V. (Tr. 321-26.) Using the Preschool Language Scale-4 Spanish Edition (PLS-4SE) test, E.V.'s receptive language skills were "low average" at 1.2 standard deviations below the mean (12th percentile); expressive language skills were measured as age appropriate at 0.1 standard deviations below the mean (47th percentile); and total language skills were measured as age appropriate at 0.7 standard deviations below the mean (25th percentile). (Tr. 324-25.) No speech therapy was recommended at the time. (Tr. 325.)

On April 28, 2010, a bilingual educational evaluation was performed by Elizabeth Antezana, MS SpEd ("Ms. Antezana"), using the DAYC test. (Tr. 341-44.) Ms. Antezana's initial observations described E.V. as "shy and quiet" with limited or unintelligible speech. (Tr. 341.) E.V's educational evaluation had the following results: adaptive skills were measured at a 27-month level for a 29-month-old child (7% delay); cognitive skills measured at a 25-month level (14% delay); behavior and social skills measured at a 22-month level (24% delay); communication skills measured at a 21-month level (27.5% delay); and motor skills measured at a 20-month level (31% delay). (Tr.

16

342-43.)  However, Ms. Antezana noted that these results should be interpreted with caution because of the deviations from the standard procedures for the tests in order to "accommodate bilingual issues and bicultural issues."  (Tr. 341.)

On April 30, 2010, E.V. was given a bilingual physical therapy evaluation by physical therapist Martha Londono ("Ms. Londono").  (Tr. 345-48.)  Using the Peabody Developmental Motor Scales, Second Edition (PDMS-2) test, E.V.'s gross motor skills were determined to be in the second percentile, or two standard deviations below the norm.  (Tr. 346.)  This test further showed that E.V. could not jump in place, kick a ball, run, stand without using her hands for support, or stand on the tip of her toes.  (Tr. 347.)  This was in large part due to decreased muscle tone that hindered E.V.'s ability to gain normal gross motor skills for a child her age.  (*Id.*)  As a result, Ms. Londono suggested physical therapy.  (*Id.*)

**B. November 2010 Hospitalization**

Following the Appeals Council decision, E.V. was hospitalized again for shunt malfunction in November 2010.  (*See generally* Pl. Motion.)  She was admitted to the hospital due to lethargy and vomiting and was transferred for further treatment to receive a shunt revision.  *Id.* Plaintiff submitted this evidence to be included in the record as new and material evidence.  (Pl. Br. at 11.)

**DISCUSSION**

**I. Standard of Review**

    **A. Standard for Remand Based On New and Material Evidence**

       A district court may remand a case under "sentence six" to the Commissioner and order that additional evidence be incorporated into the record "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

       First, a claimant must show that the evidence is "new and not merely cumulative of what is already in the record." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotations omitted) (citing *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).  Second, the claimant must show that the new evidence is "material," where it is "(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative."  *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (internal quotations omitted).  Materiality also requires "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide a claimant's application differently."  *Id*.  Third, the claimant must show good cause for failing to present the evidence during earlier proceedings.  *Tirado*, 842 F.2d at 597 (citing *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985)).

18

Generally, because claimants are only provided one opportunity to present their case for eligibility of benefits, the showing of good cause is designed to prevent claimants from appealing decisions of the Commissioner as an "end-run method of appealing an adverse ruling by the Secretary." *Szubak*, 745 F.2d at 834.

## B. The ALJ's Duty to Develop the Record

The duty of an ALJ to develop the administrative record is a bedrock principle of Social Security law. *Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5728, 2003 WL 22709204, at *3 (E.D.N.Y Nov. 7, 2003). This duty exists when there is a deficiency in the record, even where a claimant is represented by counsel. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). "The obligation to develop the record includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." *Rodriguez ex rel. Silverio*, 2003 WL 22709204, at *3; *see also Rosa*, 168 F.3d at 80 (finding that medical records consisting of sparse notes from nine visits required the ALJ to request additional information in order to have an exhaustive record on which to base a conclusion).

## C. The Substantial Evidence Standard

A district court reviews the Commissioner's decision to "determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

After reviewing the Commissioner's determination, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Butts*, 388 F.3d at 384 (quoting 42 U.S.C. § 405(g)). "Remand is 'appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim.'" *Lackner v. Astrue*, No. 09–CV–895, 2011 WL 2470496, at *7 (N.D.N.Y. May 26, 2011) (quoting *Kirkland v. Astrue*, No. 06–CV–4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008)).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."  42 U.S.C. § 405(g).  "It is the function of
the Secretary, not [the reviewing courts], to resolve
evidentiary conflicts and to appraise the credibility of
witnesses."  *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d
588, 591 (2d Cir. 1984) (alteration in original) (quoting
*Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d
Cir. 1983)).  A district court "may not substitute its own
judgment for that of the Secretary, even if it might justifiably
have reached a different result upon a *de novo* review."  *Jones
v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v.
Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.
1984)).

## II. Application

### A. The Additional Evidence is New

Plaintiff first contends that this evidence meets the
standard of "new" evidence because it indicates a worsening of
E.V.'s condition and is therefore not cumulative.  (Pl. Br. at
13-14 (citing *Carballo ex rel Cortes v. Apfel*, 34 F.Supp.2d 208,
223 (S.D.N.Y. 1999)).)  The April 2010 assessments provide
information about E.V.'s continued impairments in gross motor
skills.  (Tr. 345-48.)  Additionally, these assessments show a
worsening of E.V.'s condition in cognitive and language
functioning, and may support a finding of marked limitation that
could lead the ALJ to reach a different conclusion.  (Tr. 321-

26, 335-44.)  This information was not available at the time of

the ALJ proceedings, but was included in the decision by the

Appeals Council.  (Tr. 2, 4.) Accordingly, this information may

be reviewed by the ALJ on remand.  *Carballo*, 34 F. Supp. 2d at

223.  The November 2010 hospitalization is also new because it

relates to a worsening of E.V.'s condition, specifically in

regards to problems with shunt maintenance.  Although this

information was not submitted to the ALJ or the Appeals Council,

it may be considered by the ALJ on remand because it was not

available prior to the time the administrative record was

closed.  *Id.*

Furthermore, defendant does not dispute whether or not

this evidence can be considered "new" within the meaning of the

Act and specifically refers to the evidence as new.  (ECF No.

18, Memorandum of Law in Further Support of Defendant's Motion

for Judgment on the Pleadings and in Opposition to Plaintiff's

Cross-Motion for Remand, filed 5/8/2012 ("Def. Second Br.") at

2-3.)

### B. The Additional Evidence is Material

Plaintiff also contends that this evidence is

material because of its relation to E.V.'s condition in the

third domain of interacting and relating to others, and the

sixth domain of health and physical well-being.  (Pl. Br. at 14-

19.)  The defendant opposes this contention, specifically in

regards to the November 2010 hospitalization, stating that the additional evidence is not material because it relates to a change in E.V's condition (as opposed to a worsening of her condition) and it would not have influenced the Commissioner to decide the application differently. (Def. Second Br. at 2-4.)

The court first finds that the new evidence does not indicate a change in E.V.'s condition and is relevant to the time period for which benefits were denied in the ALJ's decision. The relevant time period begins with plaintiff's application for SSI benefits on February 28, 2009 and ends on the date the ALJ issued his decision, on June 14, 2010. Although evidence may have been created after the ALJ's decision, it can still relate to the relevant period if it supports earlier contentions regarding the claimant's condition and "disclose[s] the severity and continuity of impairments existing before the . . . requirement date." *Pollard*, 377 F.3d at 194. Evidence developed after the ALJ's decision can also be material if it "shed[s] light on the seriousness of the claimant's condition at the time of the ALJ's decision." *Carballo*, F.Supp.2d at 223.

That the April 2010 assessments relate to the relevant time period is not disputed, and was in fact included in the record by the Appeals Council. (Tr. 2, 4.) The November 2010 hospitalization is also relevant to the time period. E.V. was

not hospitalized for a new condition; she required a revision on the shunt that was implanted in July 2008, for which she already had one previous hospitalization for revision in September 2008. (Tr. 193, 197, 209-210, 214-216; *see generally* Pl. Motion.)

Second, the court finds that the new evidence is probative and likely to have affected the ALJ's decision on E.V.'s claim. Looking first at the November 2010 hospitalization, this evidence would contradict the ALJ's decision in regard to E.V.'s limitations in the sixth domain of health and physical well-being. During the May 2010 hearing, the ALJ found that E.V. had a less than marked limitation in this domain. (Tr. 30.) The basis for this decision was Dr. Rothenberg's testimony that E.V. did not require shunt revisions "extra frequently" and "some children are very lucky and it very rarely happens." (Tr. 364.) The standard for determining a marked impairment in this domain is frequent illness or exacerbations in the impairment that occurs more often than 3 times a year. 20 C.F.R. § 416.926a(e)(2)(iv). Therefore, E.V.'s additional hospitalization, considered in conjunction with the previous two hospitalizations, her frequent vomiting and five ear infections (Tr. 332, 358), and plaintiff's claims that E.V. goes to the hospital every six months (Tr. 24), could likely have altered the ALJ's finding that E.V. had a less than

marked limitation in the sixth domain of health and physical well-being.

Moreover, even without the additional evidence of the November 2010 hospitalization, the Appeals Council erred in finding that the April 2010 assessments would not impact the decision of the ALJ. The ALJ found that E.V. had no limitation in the third domain of interacting and relating to others. (Tr. 27-28.) This decision was based on Dr. Rothenberg's review of the December 2008 evaluations showing that E.V.'s language functioning was at an age-appropriate level. (Tr. 28, 198.) Yet, by the time of the ALJ hearing--about a year and a half later--E.V.'s mother indicated delays in communication skills. Dr. Rothenberg noted this discrepancy between the plaintiff's testimony and the December 2008 evaluations. (Tr. 362.) Where an ALJ does not credit testimony because it is not corroborated by medical evidence, new evidence supporting that testimony can be probative. *Pollard*, 377 F.3d at 193. This new evidence provides support for the plaintiff's testimony that E.V. had delays in language skills. In particular, at least one of the assessments, the Bayley-III test, showed language functioning that was more than two standard deviations below the mean. (Tr. 336.)

Defendant states that the results of Dr. Haley's evaluation showed E.V.'s verbal and socialization skills were

only 1.4 and 1.2 standard deviations below the mean,
respectively, and that these results were based on plaintiff's
responses rather than standardized testing.  (ECF No. 15,
Memorandum of Law in Support of the Defendant's Motion for
Judgment on the Pleadings, filed 5/8/2012 ("Def. Br.") at 21;
Tr. 337-39.)  However, the test using the mother's responses was
the Vineland-II test; the Bayley-III test, which actually showed
E.V.'s functioning more than 2 standard deviations below the
mean, was standardized.  (Tr. 336-39.)

Plaintiff also contends that the April 2010
assessments indicate that E.V. may have a marked functional
limitation in the first domain of acquiring and using
information.  (Pl. Br. at 18.)  The ALJ decision and SSR 09-3p
state that some examples of an extreme or marked limitation may
include the inability to refer to oneself and things around
oneself by pointing and naming, the inability to respond to
increasingly complex instructions and questions, and the
inability to produce grammatically correct simple sentences.
(Tr. 26.)  In the April 2010 assessments, Dr. Haley found that
E.V. could not express her emotions verbally, speak in complete
sentences, count ten objects, or state her name and age when
asked.  (Tr. 333, 335, 338.)  Further, Ms. Antezana's evaluation
stated that E.V.'s speech was limited and sometimes
unintelligible, that she could not carry out two-step unrelated

commands, and that she did not respond when asked to point to different body parts. (Tr. 341-42.) These same April 2010 assessments, however, also indicated that E.V. was extremely social, could point to objects in a book, follow simple instructions with two actions and two objects, had a vocabulary of fifty words, and could use two-word sentences. (Tr. 337-38.) The evaluation also indicated that E.V. was very timid, which could have contributed to some lack of response in the test. (Tr. 342.) This evidence is more subjective than the standard deviation scores and should be evaluated in further detail by the ALJ on remand.

Defendant contends that the results of the April 2010 evaluations are not probative and should be interpreted with caution because of adjustments made to the standard testing procedures to accommodate E.V.'s bilingual and bicultural issues. (Def. Br. at 21.) It is true that the bilingual educational evaluation administered by Ms. Antezana on April 28, 2010, as well as the bilingual psychological evaluation administered by Dr. Haley on April 22, 2010, included such a disclaimer. (Tr. 337, 341.) Nevertheless, this should be an issue that is examined by the ALJ on remand and does not bar review of the new evidence.

## C. Plaintiff Had Good Cause for Not Presenting the Additional Evidence Earlier

Finally, plaintiff had good cause for not presenting the additional evidence during the earlier proceeding. Good cause exists where "the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa v. Sec'y of Dept. of Health and Human Servs. of the U.S.*, 940 F.2d 40, 43 (2d Cir. 1991). In the instant case, the April 2010 assessments were not given to the plaintiff until May 21, 2010, one day after the ALJ hearing. (Tr. 330.) As a result, the reports were provided to the Appeals Council. (Tr. 2, 4.) Furthermore, the November 2010 hospitalization occurred after both the ALJ hearing and the Appeals Council decision and could not have been submitted earlier. The defendant does not dispute these points.

## CONCLUSION

For the reasons set forth above, the court denies defendant's motion for judgment on the pleadings and grants plaintiff's motion to remand this case for further proceedings consistent with this opinion. Specifically, the ALJ should:

(1) admit and consider the evidence of E.V.'s April 2010 assessments and November 2010 hospitalization as new and material evidence;

(2) determine whether claimant's November 2010 hospitalization, in light of previous evidence and any other newly obtained information, evinces a marked limitation in the sixth domain of E.V.'s health and physical well-being;

(3) determine whether claimant's April 2010 assessments, in light of previous evidence and any other newly obtained information, indicate that E.V. has a marked limitation in the third domain of interacting and relating with others;

(4) determine whether claimant's April 2010 assessments, in light of previous evidence and any other newly obtained information, indicate that E.V. has a marked limitation in the first domain of acquiring and using information; and

(5) explore the impact of deviations from procedure to accommodate bilingual and bicultural issues in the April 2010 assessments, particularly in reference to the results of the Bayley-III test showing language skills more than two standard deviations below the mean.

Given the passage of time between the ALJ's initial determination and the instant disposition, the court also recommends that the ALJ:

(1)  inquire upon the claimant's current medical condition
     as it relates to claimant's initial SSI application;
     and

(2)  reassess claimant's functional limitations and
     disability in light of this opinion, E.V.'s current
     medical condition, and in light of any newly obtained
     information relevant to plaintiff's claims. *See Lisa*,
     940 F.2d at 44 (holding that assessments of
     plaintiff's medical condition, after the ALJ's initial
     disability determination, may reveal that plaintiff
     has "an impairment substantially more severe than was
     previously diagnosed").

The Clerk of the Court is respectfully requested to
enter judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:   April 18, 2013
         Brooklyn, New York

                                    _____ /s/ _____
                                    Kiyo A. Matsumoto
                                    United States District Judge